Niki WITTY, Plaintiff,

v.

Hon. Ed JONES, et al., Defendants.

Civ. A. No. 82–3106.

United States District Court,
District of Columbia.

March 4, 1983.

W. Harry Garber; David C. Venable, John J. Gilece, Jr., Washington, D.C., for plaintiffs.

Stanley M. Brand, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

In this action plaintiff challenges her removal from the position of manager of the House Beauty Shop of the United States House of Representatives. She has sued the chairman and staff director of the Subcommittee on Services of the Committee on House Administration, alleging that the discharge violated her rights to due process and equal protection under the Fifth Amendment of the United States Constitution.

The defendants have moved to dismiss this action. They contend that plaintiff has failed to state a cognizable claim under the Fifth Amendment, and that they are immune from suit under three immunity doctrines: the Speech or Debate Clause of the Constitution, Art. I, § 6, cl. 1; official immunity; and sovereign immunity.

Because the Court finds that plaintiff has failed to state a cognizable claim under the Fifth Amendment, it grants defendants' motion to dismiss. The Court does not reach defendants' claims to immunity.

## I.

### Background

The House Beauty Shop was established approximately 50 years ago. It operated as a private concession until 1967. In that year, the House created a select committee to supervise the Beauty Shop. The Speaker of the House appointed the Select Committee's three members. H.R.Res. 1000, 90th Cong., 1st Sess., 113 Cong.Rec. 35143 (1967).

Effective January 3, 1978, the Select Committee on the House Beauty Shop was abolished and the Beauty Shop was placed under the jurisdiction of the Committee on House Administration. H.R.Res. 315, 95th Cong., 1st Sess., 123 Cong.Rec. 36343–36344 (1977). House Resolution 315 transferred the staff of the House Beauty Shop to the payroll of the House of Representatives. *See* H.R.Rep. No. 756, 95th Cong., 1st Sess. (1977) (committee report on H.R.Res. 315); 123 Cong.Rec. 36298–36303 (1977) (debate on H.R.Res. 315). The Subcommittee on Services of the Committee on Administration became responsible for oversight of the House Beauty Shop. *Id.*; Rule 16(a), Rules of Procedure of the Committee on House Administration, 97th Congress (1981).

Our plaintiff, Niki Witty, began employment at the House Beauty Shop during 1976 as the assistant manager. In April 1979, Ms. Witty became manager. Representative Ed Jones, chairman of the Subcommittee on Services, wrote Ms. Witty on March 22, 1982: "It is with regret that we must inform you that your services as Manager of the House Beauty Shop will be terminated at the end of the pay period ending April 18, 1982." Complaint, ¶ 11.

Based on "conversations and communications with persons in authority with the Subcommittee" and on "well known personnel policies of the Subcommittee," plaintiff believed that her employment was permanent, absent cause for termination. Complaint, ¶ 8. Plaintiff alleged that these understandings created a property interest in her job under the Due Process Clause, which defendants violated when they discharged her without a hearing and allegedly without cause. *Id.*, ¶ 11.

Ms. Witty alleged further that Representative Jones and staff director Thomas Marshall appointed an unqualified male on the basis of "close personal relationship" to replace her. Complaint, ¶ 12. Plaintiff contended that the defendants discriminated against her on the basis of age and sex, and that they knew or should have known that her age (62) and sex would impose an "unusually severe burden" in finding comparable employment. *Id.*, ¶¶ 35–36. Reading the complaint broadly, Ms. Witty claimed that such conduct violated the equal protection component and the interest in liberty covered under the Due Process Clause.

For relief, plaintiff sought $1 million as compensatory damages; $3 million as punitive damages; a declaratory judgment that the discharge was arbitrary, capricious, and unconstitutional; and reinstatement.

## II.

### Discussion

■ The Court will not dismiss plaintiff's suit for failure to state a cause of action unless it appears beyond a doubt that she can prove no set of facts in support of her claim which would entitle her to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## A. Property Interest

The Due Process Clause of the Fifth Amendment declares that no person shall "be deprived of life, liberty, or property, without due process of law." The Supreme Court held in *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), that "the existence of rules and understandings, promulgated and fostered by state officials" may create a property interest under the Due Process Clause to continued employment absent sufficient cause for termination. The plaintiff in *Perry* relied legitimately on a provision in a faculty handbook which provided that a person who had been employed as a teacher for seven years or more in the university, had some form of job tenure. *Perry v. Sindermann, supra,* at 600, 92 S.Ct. at 2699.

A case accompanying *Perry v. Sindermann* rejected a due process claim where the terms of appointment to the teaching position specifically gave a termination date without providing for renewal. *Board of Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit," the Court emphasized, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Id.,* at 577, 92 S.Ct. at 2709. Even though it was alleged in *Roth* that most teachers were rehired annually, the Court considered it significant that no statute, rule or policy secured an interest in re-employment or created any legitimate claim to it. *Id.,* at 578 and 578 n. 16, 92 S.Ct. at 2710 and 2710 n. 16.

Plaintiff relied on cases which found a clearly implied promise of continued employment in circumstances not analogous to the facts alleged here. In *Ashton v. Civiletti,* 613 F.2d 923 (D.C.Cir.1979), the employer's handbook stated "You may assume that your position is secure, if you continue to do satisfactory work." *Id.,* at 929. In *Kizas v. Webster,* 492 F.Supp. 1135 (D.D.C. 1980), the Federal Bureau of Investigation (FBI) maintained a special program for clerical employees to qualify as Special Agents. The FBI acknowledged this program by promulgating changes in it by official memorandum. *Id.,* at 1142. No statute or rule indicated anything different from the official statements in *Ashton* or *Kizas.*

In contrast, Ms. Witty's belief that her job was permanent absent cause is refuted by the existence of statutes and rules explicitly authorizing the discharge of Congressional employees with or without cause. *See* 2 U.S.C. § 92 (clerks hired by House members are "subject to removal at any time ... with or without cause"); 2 U.S.C. § 60–1(a)(2) (officers of Congress have authority to remove any employee under their supervision); Rules 14–A and 14–C of the Rules of Procedure of the Committee on House Administration, 97th Cong. (1981) (subcommittee staff "may be removed" by appropriate subcommittee chairman; employees of the committee not assigned to a subcommittee "may be removed" by the chairman within the budget approved for such purposes by the committee); *cf.,* H.R. Rule XI, cl. 6(a)(4) and 6(b)(3), reprinted in H.R.Doc. No. 398, 96th Cong., 2d Sess. § 733d (1981) (services of professional staff members and clerical staff of each standing committee may be terminated by majority vote of the committee).

Plaintiff's reliance on *Colm v. Vance,* 567 F.2d 1125 (D.C.Cir.1977), is also misplaced. The *Colm* court noted that foreign service officers had a statutory right to be separated only for cause. *Id.,* at 1129 n. 3. It declined to hold that "a fair opportunity to achieve promotion" was a property interest, finding no support in the law of the employing agency for such a proposition.

Ms. Witty's allegations fall considerably short of a legitimate claim to termination only for cause. The statutes and rules cited above permit removal of Congressional employees with or without cause. Plaintiff's belief to the contrary constitutes the kind of unilateral expectation rejected as a property interest by the Supreme Court in *Board of Regents v. Roth, supra,* and by our Court of Appeals in *Colm v. Vance, supra.*

### B. Equal Protection

█ The equal protection component of the Fifth Amendment's Due Process Clause confers a federal constitutional right to be free from classifications by gender which do not serve important governmental objectives and are not substantially related to achievement of those objectives. *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976). Congressional employees have a cause of action with a remedy of damages under the Fifth Amendment for violation of that right. *Davis v. Passman,* 442 U.S. 228, 234–35, 248–49, 99 S.Ct. 2264, 2271, 2278–2279, 60 L.Ed.2d 846 (1979).

█ *Davis v. Passman,* however, did not incorporate into the Fifth Amendment the broad inferences of discrimination permissible under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* or the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* To apply the elements of a *prima facie* Title VII or ADEA case to congressional employees like Ms. Witty would negate Congress' exclusion of its non-competitive service employees from Title VII and ADEA. *See* 42 U.S.C. § 2000e–16(a) (Title VII) and 29 U.S.C. § 633a(a) (ADEA).

In establishing Ms. Davis' right to equal protection under the Fifth Amendment, the Supreme Court cited cases involving gender discrimination by generic classifications. *Id.,* at 234–35, 99 S.Ct. at 2271. Ms. Witty does not allege that defendants discharged other female employees or older employees from the House Beauty Shop.

█ In *Davis v. Passman, supra,* Representative Passman told his female deputy administrative assistant that although she was "able, energetic and a very hard worker . . ., it was essential that the understudy to my Administrative Assistant be a man." *Id.,* at 230, 99 S.Ct. at 2269. That comment was the type of generic classification prohibited by the Fifth Amendment. Ms. Witty's allegations that a man was hired in her place and that defendants knew or should have known it would be difficult for a woman of her age to find similar employment do not state a claim of discrimination on the basis of classification by gender or age.

### C. Liberty Interest

█ A person has the right to notice and an opportunity for a hearing to clear his "good name, reputation, honor, or integrity" from a charge by the State in discharging him that "might seriously damage his standing and associations in his community." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Defendants made no such charge against Ms. Witty in discharging her; the letter of dismissal did not stigmatize plaintiff. The only part of the letter in the record gave Ms. Witty nearly a month's notice and terminated her services "with regret." The facts alleged by plaintiff show that defendants have not disclosed information about plaintiff "of such a derogatory nature as to infringe a liberty interest" in obtaining other employment or maintaining her reputation in the community. *Mazaleski v. Truesdell,* 562 F.2d 701, 712 (D.C.Cir.1978). Silence as to the reason for dismissal "does not provide the basis for an injury to professional reputation which is constitutional in dimension." *Boland v. Blakey,* 655 F.2d 1231, 1232 (D.C.Cir.1981).

### D.

In summary, the statutes and rules authorizing discharge with or without cause, the absence of any stigma attaching to plaintiff from her discharge, and the absence of any conceivable showing that defendants classified Ms. Witty on the basis of gender or age discrimination persuade the Court that plaintiff has failed to state a claim upon which relief may be granted.